## SUPREME LODGE KNIGHTS OF PYTHIAS OF THE WORLD v. KALINSKI.

(Circuit Court of Appeals, Fifth Circuit. June 27, 1893.)

### No. 123.

1. LIFE INSURANCE—MUTUAL BENEFIT SOCIETIES — FORFEITURES —RULES AND REGULATIONS.

In the organization of the Knights of Pythias, the Endowment rank is separate from the lodge, and is for insurance purposes only. The constitution provides that when a member withdraws from his lodge, or his membership therein ceases from any cause other than death, all his right and interest in the Endowment rank are forfeited. The constitution also creates a board of control, having entire control over the Endowment rank, subject to restrictions by the supreme lodge, and with power to "enact general laws, rules, and regulations in conformity with this constitution," and to alter and amend the same, when, in its judgment, the needs of the rank require it. It is also given authority to hear and determine all appeals. Pursuant to this authority, the board enacted that, when a member of the Endowment rank became in arrears to his lodge for an amount equal to one year's dues, he should forfeit his membership in the rank, and render his endowment certificate void. In a case thereafter arising, it appeared that a member of the rank had died, owing more than the prescribed dues, but had not been suspended by his lodge, and, owing to the failure of the proper officer of the lodge to notify the section of the rank to which deceased belonged of the arrears, such section had continued to receive the monthly assessments levied on the rank. The board held that on these facts the certificate had not become void, and the beneficiary was entitled to the insurance money. *Held* that, where a like state of facts was shown, the court would follow this ruling, as being an authoritative construction of the regulations by the same body that enacted them.

2. SAME—EVIDENCE—ADMISSIBILITY.

The record of this decision of the board of control could not be excluded on the ground that the decision was res inter alios acta, for the decision was a rule established by a competent authority, and was of equal validity with the original enactment which it construed or modified.

3. SAME—ESTOPPEL.

This decision must also be held to prevent a forfeiture in the subsequent case on the ground that it was a public and solemn declaration of the order, which would lead a member of the rank honestly to believe that he was complying with all the requirements necessary to keep his certificate good, thus operating by way of estoppel against the order. Insurance Co. v. Eggleston, 96 U. S. 572, followed.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana. Affirmed.

Statement by LOCKE, District Judge:

This was a suit brought in the circuit court by Eugenia Kalinski, as beneficiary of Achille Kalinski, against the Supreme Lodge Knights of Pythias, upon a certificate of membership of the Endowment Rank of the Order of Knights of Pythias, certifying that he had received the rank of the order, and in consideration of certain payments, and the performance of certain conditions, his wife, the beneficiary, would be paid, upon his death, $3,000. In answer, defendant below (plaintiff in error here) set up that one of the conditions of Achille Kalinski's application was that he should keep his lodge dues fully paid, and with that condition he had not complied; that one of the rules of this Endowment rank was that, if "any member of the Endowment rank became in arrears to his lodge for an amount equal to one year's dues, he shall forfeit his membership in the section and said rank, and render

void his endowment certificate;" that Kalinski, the deceased, at the time of his death, although he had paid the assessments to the Endowment rank in full, was in arrears to the Syracuse Lodge, of which he was a member, for more than a year's dues; and that he had forfeited his membership, and the certificate was null and void. A trial being had, and a verdict found for plaintiff for the full amount claimed, a new trial was granted, which also resulting in a verdict for the plaintiff, a writ of error was sued out, in which was assigned as error the refusal of the court to give the charge as asked, and giving the charge as it was given. These alleged errors, and the facts proven in the case, are fully set out in the bill of exceptions, which is:

"Be it remembered that at the trial of this cause before the jury on the 11th day of February, 1893, the defendant, in support of its answer, and plea, offered in evidence (1) the application of Achille Kalinski for membership in Section 363 of the Endowment Rank of the Order of the Knights of Pythias, hereto annexed, and marked 'Exhibit A,' as part of this bill; (2) the constitution of the Endowment Rank of Knights of Pythias of the World, including the revised general laws and regulations adopted by the board of control October 24, 1890, marked 'Exhibit B1,' and 'Exhibit B2,' made part of this bill; (3) also the constitution and by-laws of Syracuse Lodge, No. 50, Knights of Pythias, located at New Orleans, La., marked 'Exhibit C,' and made part hereof. That all of said documents were received in evidence without objection, and were accepted by the court as determinative of the rights of the parties in the cause of action herein. And it further appearing to the court, from the books of account kept by the said Syracuse Lodge, No. 50, and other evidence, that the said Achille Kalinski was indebted to said lodge, of which he was a member, on the 31st day of March, 1891, and at the date of his death, May 24, 1891, in the sum of $12.50, for dues owing by him to said lodge, under By-Laws, art. 4, p. 46, and article 13, p. 54, of said lodge, which sum was in excess of one year's dues, he was required to pay, as dues, but that he had not been suspended by his lodge for that reason before his death, under the provisions of section 5, art. 16, of the constitution of the lodge, and section 3, art. 14, of the by-laws, although he had received notice from the proper officer of the lodge to pay the same, and had been told to pay the same before the next lodge meeting, but that he died before such next meeting without having paid the same; and it further appearing as a fact, not disputed, that the keeper of records and seals of Syracuse Lodge, No. 50, had, under section 6, art. 4, of the constitution of the lodge, failed to notify the section of the Endowment rank to which Kalinski belonged that he was in arrears, and that the said Syracuse Lodge failed to suspend him on account of arrears, and that the assessments due by Kalinski to the Endowment rank were received in ignorance of the fact that he was so in arrears, and had been tendered back after his death, and after several months subsequent to the application of his widow for payment of policy; and plaintiff having offered the certificate of membership issued to Kalinski upon acceptance of his application, marked 'Exhibit E,' which was accepted without objection,—both parties rested upon the evidence, and counsel for defendant thereupon requested the court to charge the jury as follows: 'The jury is instructed that the books of account kept by the Syracuse Lodge, of which the deceased, Achille Kalinski, was a member, are competent to be considered by them as evidence with reference to his indebtedness, at the date of his death, for lodge dues, and that if the jury find from these books of account that he was in arrears, in the absence of proof which opposes, or of proof showing payment of these dues, or error in the account, the entries in said accounts are conclusive proof of the amount shown thereby to be due,'—which charge the court gave, as requested, adding thereto the following: 'I charge the jury as requested by the defendant's counsel, as to the proof of the arrearages due by Mr. Kalinski at the time of his death. The books of defendant are competent proof, and they are uncontradicted, and therefore establish the arrearages as being $12.50.'

"And defendant further requested the court to charge the jury as follows: 'If you find that Kalinski was in arrears, and indebted to his lodge, for dues, at the date of his death, in an amount equal to one year's dues, you must find, as a conclusion from the fact, that he had forfeited his membership in

the Endowment rank, and that the plaintiff is not entitled to recover in this suit; and the receipt of assessments by the officers of said Endowment rank (which, it is admitted, have been tendered back, as herein above set forth) previous thereto, if in ignorance of the fact that he was so in arrears, was not a waiver of such forfeiture.' But the court refused to give the charge as requested, but in lieu thereof charged the jury as follows: 'As to the construction of the meaning, as matter of law, of the fundamental law, and of the orders of defendant's organizations. I adopt the views of the board of control of the defendant's orders in Case of John A. Manikheim; and I instruct the jury, if the jury finds as a fact that the keeper of records and seal of the order to which Mr. Kalinski belonged failed to notify the section of which he was member of the fact that he was in arrears for dues to said lodge, and also that the lodge failed to suspend Mr. Kalinski in accordance with law, and also the section of the Endowment rank had received the monthly assessments of said Kalinski up to the date of his death, then the verdict will be for the plaintiff, and against the defendant, for the sum of three thousand dollars, with interest from judicial demand.'

"The views of the board of control, referred to in said charge, as well as the instructions of the supreme chancellor to the various grand chancellors and officers and members of the various sections of the Endowment rank, is hereto annexed, and marked 'Exhibit D,' and made part of this bill."

Which refusal of the court to give the instructions requested, and giving the foregoing instructions in lieu thereof, is alleged as error.

Chas. S. Rice, John D. Rouse, and Wm. Grant, (Rouse & Grant and J. Zack Spearing, on the brief,) for plaintiff in error.

M. Marks and Wm. Armstrong, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts as above.) Under the assignment of error, the only questions for us to consider are—First, whether refusing to charge, in effect, that the forfeiture of the membership of Kalinski depended solely upon the fact of his being in arrears to his lodge to the amount of a year's dues, was error; or, secondly, whether charging that the fact that the keeper of records and seal of the order to which Mr. Kalinski belonged failed to notify the section of which he was a member of the fact that he was in arrears for dues to said lodge, and that the lodge failed to suspend him in accordance with law, and that the Endowment rank had received the monthly assessment up to the time of his death, would bar the forfeiture of his membership, was error.

The section of the Endowment rank of the order is a separate and distinct organization from the lodge, and for insurance purposes only. The dues and assessments of each are kept distinct, and the nonpayment of one does not affect the amount of the other, but it is provided that no one can be a member of a section unless he is a member of a lodge. There is no question as to the sufficiency and integrity of the original certificate of membership, but it is claimed by plaintiff in error that under the agreement of the insured, as found in his application, and under the rules of the order, he was in arrears to his lodge for an amount equal to one year's dues, and had forfeited his membership in the section and rank, and rendered void his endowment certificate. The penalty of a forfeiture of rights

under a contract of indemnity or insurance is not favored in law, and it is only by positive, direct, and unavoidable terms in the agreement that it will be enforced. Especially is it so in such a case as this, where payment or nonpayment of the amount unpaid is a nonessential to the contract of insurance; where it neither increases nor diminishes the fund from which the payment of death losses was derived, or increases or diminishes the risks to which the insured is exposed.

A careful examination of the application of Kalinski for membership shows that the only thing found therein, which can be invoked to forfeit his membership, is found in the paragraph:

"I hereby agree that I will punctually pay all dues and assessments for which I may become liable, and that I will be governed, and this contract shall be controlled, by all the laws, rules, and regulations of the order, governing this rank, now in force, or that may hereafter be enacted, or submit to the penalties therein contained."

There is no penalty of forfeiture declared in this language, and although he there promised to pay all dues, unless there is such penalty attached to such nonpayment by some other rule or regulation, it cannot be held to ensue. It is claimed that such rule is found in what was at that time article 10, § 1, and what has since become article 8, § 1, of the code of laws, rules, and regulations of the order adopted by the board of control of the supreme lodge of the order, which is:

"When a member of the Endowment rank becomes in arrears to his lodge for an amount equal to one year's dues, he shall forfeit his membership to the section and said rank, and render void his endowment certificate."

Upon the binding force of this rule the questions in this case depend. The deceased had bound himself to be governed, and stipulated that the contract should be controlled, by all the laws, rules, and regulations of the order, and by this measure alone can the rights of his beneficiary be determined.

The constitution of the order, which must be accepted as the fundamental, organic, and controlling law, provides for the manner of the forfeiture of the rights of members, and in article 11, § 1, declares that, if one resign, "such resignation shall cause a forfeiture of all amounts paid into, and all claims upon, the Endowment rank." Section 2 provides that:

"Whenever a member of the Endowment rank withdraws from his lodge, or whenever his membership therein ceases, from any cause other than death, he thereby severs his connection with this rank, and forfeits all his right, title, and interest in and to the endowment fund."

Section 3 provides for an appeal, in case of a suspension of a member, to the grand or supreme lodge.

This would certainly seem to provide for the manner in which and by which a member should be held to forfeit his rights of membership, and raise the very serious question whether any rule by which this manner was changed, which declared any other manner of forfeiting such membership, did not infringe upon the constitutional rights of the members, and was therefore null and

void. The well-established principle of "expressio unius exclusio alterius est" would seem to apply, and the providing one way of determining forfeiture preclude another, and more stringent. But we do not find that we are compelled to decide such question, as we consider it has already been done by the order itself.

The constitution further provides, in the organization of the order, for a board of control, and states very fully its duties and powers. Article 8, § 5, provides that:

"The board shall have entire charge and full control of the Endowment rank, subject to such restrictions as the supreme lodge may from time to time provide. They shall hear and determine all appeals, and their findings shall be final, unless reversed by the supreme lodge in session."

Section 9:

"The board is hereby authorized to enact general laws, rules, and regulations, in conformity with this constitution, for the sections and the membership of the Endowment rank, and alter and amend such general laws, rules, and regulations, when, in their judgment, the needs of the rank require such action."

In accordance with such provisions, the board of control adopted certain general laws, rules, and regulations, and provided in article 3, § 5, of the same, that the secretary of each section shall keep a financial account with each member, and in January furnish to the master of finance of the several lodges a list of the names, and request such officer to inform him whenever any member of the lodge became in arrears to the lodge, of an amount equal to a year's dues. They also provided, as quoted in article 8, § 1, that when a member became in arrears to his lodge he should forfeit his membership in the section. It was by this board, and under the powers thus given, that the laws, rules, and regulations by one of which it is claimed the forfeiture took effect in this case were enacted. But it will be seen that their authority to establish rules was limited to those which should be "in conformity with this constitution;" otherwise, they had full control of the Endowment rank, not only to make laws, but to hear appeals. They not only constituted the chief legislative body, but also the supreme court of the order, whose findings were to be final, unless reversed by the supreme lodge in session. This was the organization, and these the established laws, of the order. The constitution had provided that when a member withdrew from his lodge, or his membership therein ceased from any cause other than death, he forfeited his rights, title, and interest to the endowment fund. The board of control had declared that if he was one year in arrears for dues the forfeiture took place. Whether this rule was or was not in conformity with the constitution, and how far it was binding, was directly submitted to the board of control, sitting as a judicial body, and passed upon.

In addition to the copies of such constitution, regulations, and by-laws, we find in the record, and made a part of the bill of exceptions, by special declaration, a finding and decision of the board of control, as found in volume 5 of the journal of the supreme

lodge of Knights of Pythias for the year 1887–88, p. 4097, in a case presented to that board by the supreme secretary.

It is contended by the plaintiff in error that this exhibit was not offered or received in evidence, and is not, therefore, a fact to be considered, and can have no bearing or weight in this case. We cannot accept these views of this exhibit. It is brought directly into this court by the plaintiff in error. Its validity is not questioned, nor that it was presented and considered by the court below; and, if the substance or matter contained is relevant, we consider it too late to object to the manner in which it is presented for consideration. When we examine the matter of this exhibit, we find that it is a decision and ruling of the board of control, to whom the constitution of this order had given entire charge of this Endowment rank, under which this certificate had been given, and who had power to make, and who had made, all laws, rules, and regulations, and in whom was the power to alter and amend such rules and regulations, when, in their judgment, the needs of the rank required action. Not only was it a decision and ruling of theirs upon a subject of which they had full jurisdiction, but one in which their word became law. The facts also presented by the supreme secretary made it a case in which any ruling established became directly relevant in the questions herein pending. The case submitted to the board of control, as shown by the record of the journal of the supreme lodge, was:

"Brother John A. Manikheim, a member of Sec. No. 63, Endowment rank, of Washington, D. C., died on the 11th day of January, 1887. At the time of his death he was in arrears to his lodge for one year's dues, but had paid all of his assessments to his section of the Endowment rank."

The decision was:

"The board of control, after a very careful consideration of the facts in this case, decided, in view of the fact that the keeper of records and seal of the lodge to which the late John A. Manikheim belonged had failed to notify the section of which he was a member of the fact that said Brother Manikheim was in arrears for dues to said lodge, and that said lodge had failed to suspend said Manikheim in accordance with the law, and that said section of the Endowment rank had received the monthly assessments of said Manikheim up to the date of his death, the Endowment rank is liable for the full amount of the endowments, and the supreme secretary is instructed to pay the beneficiaries the amount due."

The question therein presented was the exact one, in point of fact, as shown by the evidence, as in the case at bar: The brother of the order was in arrears for one year's dues, the keeper of records and seal of the lodge of which he was a member had failed to notify the section of which he was a member of the fact that he was in arrears for dues, and said lodge had failed to suspend him, and the section of the Endowment rank had received the monthly assessments up to the time of his death.

There can be but one conclusion drawn from this decision. The board of control had been, by the case presented by the supreme secretary, brought face to face with their rule providing that simply the being in arrears for a year should forfeit membership as viewed in the light of, and compared with, article 11 of the consti-

tution, and the question fairly presented whether a forfeiture of rights in a manner not provided for in the constitution was in conformity with it. Their decision was a construction placed upon article 8 of the laws which made it in conformity with the constitution, and become of equally binding effect as the previous rule. That this was so considered by the supreme chancellor of the order is plainly seen by the immediate issue of the instructions contained in the same exhibit, calling to the attention of the officers and members of the sections the importance and necessity of immediately forwarding information of arrears of dues.

It is true that subsequently to this decision, in the general laws and regulations adopted by the board of control October, 1890, the provisions of article 10, § 1, were continued in article 8, § 1, only changing the terms of arrears necessary to entail a forfeiture from six months to a year; but this in no way, do we consider, added to its force. The board of control had already construed the law of article 10, § 1, and, in effect, declared it not in conformity with the provisions of the constitution; and a re-enactment of the same, with such immaterial change, could not do away with the force of the rule of construction given.

We can in no degree accept the position urged by the plaintiff in error, that this decision was res inter alios acta, and of no weight or relevancy in this case. This case is to be determined by the rules and regulations of the order. The order had, in its organization, established a board, to whom was given an almost unlimited power to establish rules and regulations which should control the relations, rights, and duties of its hundreds of thousands of individual members, and to change and amend them as deemed best; and to hold that such a finding as this was simply to determine an individual case "out of consideration for the beneficiary," and might be changed in the next case from personal motives, would show a lack of appreciation of the principles, aims, and objects of the order, and the good faith of its board, to which we consider it justly entitled. We consider that the decision in the Manikheim Case was not only not res inter alios acta, but was a rule established by the same power, and entitled to the same respect, as the original article 10, § 1, and pronounced after more careful consideration than that with which the former was enacted. As well might it be claimed that the decisions of any supreme judicial tribunal, state or national, establishing a rule of property or of individual rights, was res inter alios acta, and could not be relied upon as of any binding force by those who had subsequently acquired property or claimed rights under identically the same circumstances. In this case even more weight should be given to such decision, for here the board was not only judicial, but was also legislative. It could not only say what the law was, but what it should be.

The question, then, turns upon whether Kalinski was at his death a member of his lodge, notwithstanding his being more than one year in arrears. The constitution and by-laws of Syracuse

Lodge, of which the deceased was a member, provide (article 16, § 5) that:

"A member who is in arrears to the amount of one year's dues, and has been notified to pay the same, shall be suspended by the chancellor commander in open lodge, and a record of the same kept in the minutes."

Until suspended in open lodge in accordance with this section, we find no law that would forfeit the membership of Kalinski, although he had been notified of his being in arrears.

But another view of this case may well be considered. In the case of Insurance Co. v. Eggleston, 96 U. S. 572, Justice Bradley, in speaking for the court, says:

"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

Here the order, the insurance company, in the most public and authoritative manner, had published, as a portion of the journal of its supreme lodge, the solemn judgment and decree of its highest legislative and judicial body, declaring that a member from whom the monthly assessments had been received, and who had not been suspended at the time of his death, although a year's dues in arrears, had not forfeited his membership, but his beneficiary was entitled to his benefit. This publication was made nearly four years before the death of Kalinski, and the suggestion that he may not have known of it cannot for a moment be accepted. What declaration by an insurance company could be more entitled to respect and confidence, and, if misleading, more liable to mislead? Such a published declaration, made by a private or joint-stock insurance company, would unquestionably prevent the forfeiture of any policy coming within the terms of its provisions. How much more should it have such effect within the limits of an order like this, where it is presumed that such published declarations are for the information and guidance of those whose mutuality of interest is one of the principles of its organization. Considering the decision in the Manikheim Case in either way, as the establishment of a new rule, or as the publication of the decision of the board of control, we consider the plaintiff in error as estopped from pleading a forfeiture, and we find no error in the court below, and the judgment is affirmed, with costs.